Good morning, Your Honor. For the Police Department, I'm Robert Williams, and I'm the attorney for Mr. White. This case is a unique case, and it has to do with mental disabilities. Mr. White suffers from an organic brain disorder. What is at issue here is whether or not, by failing to raise this issue, he can be released from prison. And I think that's a very important issue. Let me actually step back for a minute, because it does have a very complicated history. Let me cut to the chase a little bit, which is, it seems he had some form of representation when the 1990 claim was submitted. Is that right? Your Honor, no. He had a paralegal, Carol Nuss, right? Who's she? She was a girlfriend. Okay. And that was their relationship, and she was never recognized by the Social Security Administration as a representative. And it's very important for this process that there be an actual representation. Yes, it is clear that she did help him submit documents at some point in time, but she was not his representative and had no legal obligation to help him with responses. And by the time you have to be his representative, I mean, I have the documents here. She's identified as his representative. She signed it, and he signed it. Those do not – that is not the form they have to use. Where does it say they have to use any particular form? It's in the regulations, Your Honor, and we cited it in the district court. When I looked at the regulation, I didn't see where you have to use any particular form. It has to say a few things. You know, you have to say that you're the representative. It has to be signed by the applicant. It has to be signed by the other person. It has to indicate that, you know, the person's the representative. But I didn't see anything that has to be on yellow paper or, you know, anything like that. Or is it mother may I? You know, I mean, it just has to say that. I will look for the specific. But back to the fact of the matter. You don't dispute, do you, that she was represented to be – she says she's the representative. She signed it. He signed it. We do have an issue, though, because Mr. White has illiteracy problems. She signed it. That is not a clear indication that he accepted her as a representative. This is someone who was helping him, and she did not have a legal obligation to continue. Well, the question on the form, it says here, do you need help completing the form? The box is yes. Who assisted you? C.A. Nuss, 690 Ranch Road Drive, Orange, California. Relationship, friend. Signed by him. Signed by her. Yes, and that's a relationship. It's friend. That's a very different relationship than a recognized lay representative. And this one says representative. Signature of claimant's representative. Carol Nuss, non-attorney. The box is checked. Right next to it is his signature. Yes, Your Honor, but that is not an appointment of representation form. So why does that make any difference? If the claim had been articulated, let's assume for the sake of argument that the claim was articulated in the way that he wanted to and she had representation. If the substance of the claim is communicated, what's the problem? Your Honor, the problem here is whether or not there was somebody who had a legal obligation to represent him and help him make a decision at the time that he was denied. By that time, their personal relationship had fallen apart. She wasn't somebody who was getting notices from the Social Security Administration. She wasn't somebody who had any obligation to help him. And he did not have the ability, and the medical evidence is clear that he did not have the ability to understand how to protect his own rights at that time. So by the time he gets rejected, he has no one to help him, and he is on his own. And I do think that Judge Breyer got that part right when he said, you know, this is not adequate. You cannot make a finding that he was represented at this time. He was on his own and at a loss, and you have the medical evidence that was established showing that he did not have the ability to pursue this on his own. So what do we do with the ALJ finding that between 94 and 96 he engaged in substantial employment activity? Your Honor, I think that it's, one, you're talking about an issue of a presumption, and under Moore, as we talk about, this is at the end of the closed period, and so that is not of itself substantial evidence that he was unable to work during that prior period of 90 to 94. I would, though, in fact, say that the ALJ is wrong in both, and the Judge Breyer is wrong on this, is that what you have is the evidence in this record is that this was a job he was only able to hold because he had a friend who was not holding him to competitive workplace standards. He was essentially a barback helping out a girlfriend. There was no evidence of them losing money, but there's no evidence that he had competitive standards, and we do have the finding on the one end that in 1997 he is disabled from the mental impairments. We have the medical testimony. What I don't understand is he, he, he, he, he, he obtained benefits eventually. And he's still, he's now trying to reopen the 1990 proceeding. But there were proceedings in 2000 and 2004, and as I understood it, I may be mistaken, this is the same problem, impairments, that he's, that he's talking about. So why didn't he try to, why didn't he make these arguments in the 2000 and 2004? Your Honor, even taking that latter set, it still took him five years. It still took five years for him to get benefits based on the records that he had starting from 1990 going forward. You know, this obviously has opened a can of worms. But what was in front of Mr. Samus at that time? He had a client who came in, who had filed an application, had an application date, and they pursued that, and they pursued it vigorously to get him his benefits. You need to remember, this is a Title 16 case. This is a guy at the bottom of, you know, he's at the bottom of our socioeconomic scale. He has nothing. You need to get him in. You need to get him through. You need to get him those benefits. You don't need to be reopening at that time and going back and saying, hey, I wonder if there is something else. And these are missing records at the Social Security Administration anyway. They only were able to go ahead. Sotomayor, is there any law that's set up that you don't have to make your claim from the time that you think you're really disabled because it's easier to make it for the more recent period, and then you can go back? I think, in fact, there's a huge body of law that supports it in this context, because over and over again, what we see in the case line, Hecker versus Day and Henderson X. Rel. Henderson from the Supreme Court is a Social Security process that's unusually protective of the rights of the claimant. And here you have somebody who has a mental disability. They finally are able to get representation. They have a date that they can establish right away, and they prosecute that. And they prosecute it vigorously. I mean, there are three applications. It's a confused process, but they get those benefits. But it still takes five years for somebody who's getting Title XVI benefits. This is welfare. This isn't just Title II. This is someone who has essentially nothing. It is not reasonable to expect that a representative coming in at that time in 1997 with the records that are available then, because it took all new evidence to establish that I was going back and was done on the remand, to look for what is there possibly out there where I can go back now. This is not an unfair thing. This is the evidence is there. There was not a failure of proof once it was brought forward and presented. And there's nothing that says, you know, I must try to identify my earliest, earliest possible opportunity. The question is, what can you prove up at any given time? And Mr. Sammons was presented with an application that had a date. He prosecuted that. In the process, he's able to identify that there's something earlier available to this claimant. And they make the claim and request for reopen, based on the regulations which say that he is allowed to do so because during that 60 days, you had a guy who couldn't understand how to take care of his own rights. It's, you know, we don't go reopening everything all the time. He had a professional and ethical obligation to move what he was hired to do forward. And when they were able to identify there was further things that were available to this claimant due to his inability to understand his earlier process, it was absolutely appropriate and he should have sought to reopen and to go back and seek benefits from the earlier time. It should have been provided because the medical evidence shows that throughout that time, but for having a friend who was unusually accepting of mistakes  he was able to maintain employment and not have to rely on public benefits to survive. And I think we want to encourage people to do that and we need to encourage people who are, you know, suffering from a mental disability to be able to get the full rights they're entitled to. And I'll preserve the balance of my time on this issue. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. My name is Ann Mailey, representing the Acting Commissioner of Social Security Administration. The only way that the appellant can revive this 1990 application for SSI benefits is through Social Security Ruling 91.5P. And in order to do that, he has to demonstrate that he was both unrepresented and mentally incapacitated at the time that he filed this 1990 application, and he can demonstrate none of those things. This appeal and appellant's arguments are nothing more than an attorney's attempt to get around administrative finality and should be rejected. Appellant has not demonstrated that he was unrepresented. So what do we do with Judge Breyer's finding that he, in fact, wasn't represented? The district courts? Yeah. The government respectfully disagrees with the district court's finding in that regard. The ALJ properly found that the appellant was unrepresented. Excuse me, that the appellant was represented. Right. But the district court disagreed. Right. So on an appellate review, how do we deal with that? Well, the court, of course, can affirm for any basis in the record, and the court conducts to no vote review. Well, let's assume for the sake of argument that the district court was right in its determination that, one, he wasn't represented, and, two, that the ALJ didn't determine whether he was mentally incompetent at the time or not. So let's just hypothetically assume that. Where does that leave us? Well. Well, you'd have to agree, if he got it all wrong, we'd have to reverse it, right? I mean, if he got everything wrong. Well, there's – You don't think he got it wrong. Well, first of all, the government disagrees. But this case could not be reversed because there's absolutely no medical evidence in the record to demonstrate, first, that this person was mentally incapacitated, but there's just no medical evidence to show that the claimant was mentally disabled. There's nothing in the record prior to 1997. That's not what Judge Breyer found. He said the ALJ did not determine. That's what Judge Breyer said. Right. So, you know, if he'd stopped right there, if there were no other issues in the case, I think the district court would have remanded. But he affirmed on alternate grounds. But I want to focus on those two. I mean, do you agree with him that the ALJ did not determine whether or not the whether he was or not, but would the ALJ determine that? Yes. The ALJ did not make a finding on mental incompetence. I agree that the ALJ did not make a finding. So the first issue kind of rises or falls on whether or not Judge Breyer was right on legal representation, right? Right. Okay. So let's get to his alternate grounds. The ALJ's alternate grounds. I'm sorry, the district court's alternate grounds. What Judge Breyer said is, you know, you lose on the first issue. But I'm going to rule for you anyway. So why don't you tell us why you think the alternate grounds are sufficient, assuming that the district court was correct on issue one.  I think the district court determined that it was appropriate, that the, it was appropriate to rule in favor of, or that it was appropriate, the ALJ's finding was appropriate because the claimant had an opportunity to raise the issue of the, the ruling because he was represented since at least 2000 and had opportunities to raise the issue in the administrative proceedings that occurred. There was an administrative proceeding in 2000 and 2004, and the issue of his mental incapacity could have been raised at that time. And that's where I have my question with the district court's decision, because I'm not sure that there are cases that apply race judicata in the administrative context the same way we would have, or we would in the judicial context. In other words, we can focus on whether it could have been raised and wasn't. I'm not sure there's a, we've said that in the Social Security context, have we? I don't think so, but I. So if that's wrong, if Judge Breyer got that wrong, where are we left? I just don't think that the Court needs to find based on race judicata in this case. It's not necessary to really even go there, because the appellant hasn't demonstrated the two prongs that are necessary to get relief under this ruling, because he has to show both that he was unrepresented again and that he was mentally incapacitated, and that just hasn't been shown. Help me out here. I'm just thinking analytically. If we agree with Judge Breyer as to Issue 1 on representation and the lack of finding of mental competence, and I also conclude that race judicata doesn't apply in the administrative context, is there another basis on which to affirm the district court or not? I'm just thinking analytically, because then I have to go back to the merits of the issue.  issue, but I'm going to go back to the merits of the question. Certainly on the issue of the question. I mean, if I just let me put my question again. If race judicata is off the table, and if, in fact, Judge Breyer is right that he was not legally represented and there was no determination of capacity, where would that leave us, hypothetically, in terms of the analysis? Well, I think that the district court talked about a general sense of whether this case was fair when he talked about the fact that the claimant could have raised this issue through his attorney because the claimant was represented since 2000 by an attorney, and he talked about the sense of waiver, and perhaps waiver wasn't the right word to use, but the district court talked about the sense that the claimant had been represented since 2000 and didn't raise this issue. And while the district court didn't expressly say this, it is the case that the claimant filed applications in – filed additional applications for Social Security benefits in 1999 and again in 2002, and then he filed another application in 2004, and when he filed those applications, he did not list an onset date, an earlier onset date. He listed an onset date of October 1997. Right. But where's the case law that supports this? I mean, let's assume the district court's right and it doesn't look like it's fair to the administration. What's the case law that says that there's a waiver? There is not a specific case that talks about the fact that there's a waiver, but it just flies in the face of administrative finality, the idea that someone could come back after this point. He filed an application in 1990, so it would be 16 years. I'm not quarreling with you on that. Sure. I'm just reading through this and parsing it. I'm not sure that I see a case that stands that would preclude relief here. If we assume that he's wrong on res judicata, and I think – I have trouble with administrative res judicata, applying that. And if he's right on Issue 1, and I'm not – I'm not quibbling with you. What's the basis I want you to affirm? Well, the fact that this ruling does not apply. Excuse me. The fact that this ruling doesn't apply, Your Honor. He hasn't – he has to show that, first of all, that he was unrepresented. When he has this representative, this woman was filing detailed applications on his behalf. She's – she files this application in 1990. She talks – she details his physical limitations. She's very specific about his bending, reaching, walking, and sitting limitations, the types of household chores that he could perform, that he could drive for short distances only. And she talks about his circulation and breathing problems. The notes are carefully typed. She talks about the fact that he could – he – she – she details his thoracic and cervical x-rays and medical – other medical problems and medical records that he has and where to find them. She's the only person, the only representative in this entire case that managed to dig up his high school records that show any kind of mental impairment that he – that he has. No one else, including the attorney he retained in 2000, was able to find those records. Those are the only records to the extent that they are medical records. They're not. But they're the only evidence of a medical impairment. Let me ask you, because maybe I don't understand how this works. But when – in 2000, he was reopening the same proceeding, wasn't he, in essence? He reopened – well, no. In 2006, he – in 2000, he retained an attorney. It wasn't until 2006 that this attorney, under this ruling, 91.5p-91-5p, this attorney sought further review of this 1990 case. Okay. But he did seek review of the 1990 proceeding. Yes. And in that, he said that the onset date of the disability, which is the same disability. Yes. Was what? Oh, at that time, the attorney said that it was – that the onset date was 1988. Okay. So he was saying that he had been suffering from this disability since 1988? Yes. But prior to that time, there had been all of these hearings. There had been all of these opportunities to raise it, and the attorney hadn't and the claimant hadn't. They didn't raise it during the process. Well, I understand that. But at some point – at some point, there was a determination that there was an onset date of a certain date by a court, wasn't there? Yes. In 2004, there was a favorable decision, and the claimants received benefits as of 1997. The claimants receiving benefits to this day, SSI benefits, that was a 2004 favorable decision. Okay. So what is left now with respect to the 1990 proceeding? What are we talking about here in terms – I'm trying to relate what has been already actually adjudicated, not what could have been or what was waived, but what has actually been adjudicated that relates to this claim? Well, there's a – there's the 1990 application was for neck and back pain. The non-attorney representative filed a request for reconsideration, and then it was not appealed. Right. So then years go by, and then in 2006, the attorney requested basically a reopening. But in between that time, the – there was an application in 1999 where the onset date was 1997. There was an – there was an application in 2002 where the onset date was 1997. There was an application in 2004 where the onset date was 1997. In 2004, there was a favorable decision. As to those applications, he's getting benefits as far back as 1997, and he's still getting benefits today. Right. But I think – He's also working meanwhile. Go ahead. Well, here's my difficulty with the case, and I'm trying to work my way through it, is if you boil everything down to what Judge Breyer is saying, I think what he's saying is he had the opportunity to assert a different onset date on all those pleadings, but he didn't. That's right. Right. But there's no case that says that's fatal. We haven't applied that form of res judicata in the administrative context before. And I don't see any support for the notion. It may be fair. I agree with you. So I have some difficulty with that argument. So then we get back to the first reason, which is, is he unrepresented at the time, and did he lack the mental capacity? And you've conceded that there's no determination of mental capacity one way or the other by the ALJ. So then it comes back to was he representative with the meaning of the Social Security Act. Judge Breyer says he was not. The ALJ says he was. But the evidence shows that – And we're not going to, you know, speaking for myself, I'm not going to sit as fact finder on that. You know, this far removed from all of those decisions. Well, looking at the record, substantial evidence shows that the claimant was represented. What else was this person doing? Wait a minute. We're not going to sit as the fact finder. We agree with that. So we have two previous fact finders. We have Judge Breyer and we have the ALJ. What's – what rule do we apply? Doesn't the district judge have a duty to defer to the ALJ unless it's clearly erroneous? Oh, I think this Court can absolutely look at the ALJ's decision and – That's what Judge Breyer should have done. Isn't that what your argument? I'm trying to help you here. We're all trying to help you. The ALJ found that he was represented. Judge Breyer found that he wasn't. That's right. I mean, it is that the ALJ was the decider. You know, he's the one who – Right. And this Court – Yeah. I'm sorry. Go ahead. No. Here's what Judge – let's focus on what Judge Breyer said and tell me how you disagree with it. He says that you didn't – that the representative was not a representative within the meaning of the Social Security regulations. And he goes down and he says, Although the SSA sets forth various instances in which Nuss appears to have expressly The record is devoid of any evidence that Section 416.1507 steps were followed. Accordingly, Nuss was not plaintiff's legal representative at the time. And that – So, I mean, how do you disagree with that? Do you agree with him that the steps weren't followed under the regulation? Well, first of all, and this is a really important point, the ALJ, as the ALJ said, points out, that regulation – well, no, excuse me. As the ALJ points out, this is a very old case and the records were lost. So it's very possible that the steps were followed, but that that document's just not in the record. So when he says the record is devoid of any evidence the steps were followed, he's correct? No. We just don't know whether the steps were followed because that record very well could be – could have. But not in any record before the district court or us. Right. He's saying – Judge Breyer's saying it's not in the record. And you're saying it could be, but it's not. Well, it's – it wasn't before the judge. It could have been filed. But because the case is so old and because the Commissioner had a hard time finding the records, because the case was so old, the record could have been lost. So she could very well have filed that document that the district court is so interested  Okay. I've exhausted myself on this one. Any further questions? No, thank you. Okay. Thanks. So – Not your time, Sophie. Oh. Thank you. Yeah. Your Honors, if I may, just a few points quickly. One, I do believe that Judge Breyer is incorrect when he says that the ALJ did not make a finding of mental disability. And I'll direct the Court's attention to – So you think he did? Yeah. The initial administrative record, or the ER that we filed originally, specifically the ALJ states, Dr. Rack stated that if the claimant were acting alone, he would have had an impaired ability to request review of his adverse disability determinations, despite Dr. Rack's finding. And then he goes – the ALJ goes on to these procedural and alternative things. So I do think that there is, in fact, a finding here that at the time, he lacked the mental capacity that's been testified to, the ALJ said so. But, you know, you've heard – I mean, I have some technical concerns with this, but if you look at the whole situation, I mean, this is awfully late to be asserting a reopening of a 1990 case. I mean, I am sympathetic with what Judge Breyer is saying, which is, you know, my gosh, you've been litigating this stuff for a long, long time, and you've argued for an onset date that is far past the one argued in 1990. I mean, at some point, their administrative finality has to – has to set in. Your Honor, I don't think it does here, though. And that's – and that's our sole point, is that if nothing had happened in between, none of us would – you know, if there had been no 1997 or – I'm sorry. Yeah. We all lose sight of it a little bit. But you're not. We're not. But in this context of the Social Security Administration, you know, the courts have said over and over again, failure to raise something at the Social Security level doesn't wait until later. Failure to raise is not the same as an affirmative request that, you know, perhaps you provide benefits as of a certain date, that this is the onset date. That's not – it's not the same as failing to say that something – it's not just saying, I didn't make this argument, but you're making a specific request that the court find that this was the onset date. And now you're saying, no, it was a different one. Your Honor, I would, in fact, suggest that the only thing that would be waived, if anything, would be the argument that the period of substantial gainful employment of the 1994 to 1996, that he would be entitled to benefits for that. The 1997 onset date was necessary because it was a Title 16 application, and it's undenied that he was earning at a level that would preclude him from benefits if he were not – you know, that the presumption was against him. So I don't think that by saying that this disability begins – this period of disability we're asking for benefits for begins in 1997 and goes forward is at all inconsistent with saying, in fact, he had an earlier period of disability. It's just the nature of the benefits sought at that time would preclude seeking an earlier date absent a showing of this, and then you have this sort of carve-out period. So if the Court were to limit – were to say that Mr. Samus's conduct caused a limitation so that Mr. White's only entitled to the period 1990 to 1994 when he was working at the bar, that, I think, might be something that would make sense. But there's nothing inconsistent with saying, I'm asking for benefits from 1997 forward under Title 16, and perhaps waiving this argument that there's this two-year period that there's a presumption of the ability to work that would otherwise be rebuttable. So I do think that it is not necessarily inconsistent, the positions that have been taken here. So if we take away the – I guess the various arguments, what period of time do you think that he was effectively unrepresented? Because, Judge Silverman has pointed out, there were many periods of time when he was represented in the 1990 application. And as Ms. Malley has pointed out, that she went to – his representative went to great lengths to get records and put him in the records. So what point do you think that he was so unrepresented and he was not competent that his rights were effectively denied? The period when he was unrepresented was the period when it mattered. That was the original administrative denial. Ms. Nuss helped him take the immediate sort of intermediary staff request for reconsideration. And then when that's denied, she's no longer present. So to be able to assert that – You're talking about the appeal period. The time period? The appeal period. Is that what you're talking about? Is this what it all boils down to in the real world? Yes, Your Honor. It boils down to that. when he would have needed to ask for an ALJ hearing. He didn't have anybody who was representing him. I mean, I do think Judge Breyer is absolutely right. The types of representations, even though it says, I'm the representative and she signs it, those are not notices. Those are not things putting him on notice. This is a person that he can definitely rely on. And it doesn't put the Social Security in a position where they're notifying her and she has an affirmative obligation to send in a notice of withdrawal. This was a girlfriend. They broke up in between the time of one hearing and the next. And where's that in the record? I'm sorry? Where's that in the record? That is in the record. Ms. Nuss did provide a declaration that is there where she does indicate that she was not representing him at the time that the period ran in, I think it was November 1991. And I will go back and get it. I'll take it. It's in the record. One final question for me and then others may have some. Ms. Malley points out that records are lost, but there is a notion of a presumption of administrative regularity. Why doesn't that apply here? I think that when the records are lost, the burden shifts back to them to show that there was such a record that would be there. And I do believe that there's statute, there's case authority for that. Okay. All right. Any further questions? All right. Thank you very much for your arguments. I'm sorry our questions protracted you a little bit, and the case will be submitted for decision.
judges: Schroeder, Thomas, Silverman